And we'll call the first case today, United States of America v. Carlos Cegledi. Mr. Rowe, I understand you'll introduce the advocates. Good morning, Your Honor. Good morning. Your Honor, it's my pleasure to be here on behalf of Duquesne University School of Law Federal Litigation Clinic and to introduce to the Court two third-year law students, Kristen Kravnik and Mary Hancock. We've asked the Court to allow us to adjust the batting order a little bit this morning and have Ms. Kravnik go first to address the Rule 609 issue and the first prong of Strickland and then to have Ms. Hancock handle the second prong of Strickland and the procedural issues such that they are. And we also propose to have Ms. Hancock handle rebuttal. So with that, I'd like to turn it over to Ms. Kravnik. Ms. Kravnik. Now, Ms. Kravnik, we welcome you to the Court. Thank you, Your Honor. And I see there's a time allotted on the clock here, but does anybody request a rebuttal? I will be requesting to reserve one minute of rebuttal for my time, Your Honor. That request will be granted. Thank you, Your Honor. And you may proceed. Good morning, Your Honors, and may it please the Court. My name is Kristen Kravnik, and I, along with my co-counsel, Ms. Hancock, represent the appellant in this matter, Mr. Carlos Zaglatti. Your Honors, this case turns on the basis of the stipulation entered into the record pursuant to this Court's order on March 27, 2015. This stipulation establishes that key governmental witness, Antonio Pagan, pled guilty according to Federal Rules of Criminal Procedure 11, and that there is a factual basis for the entering of this guilty plea. The trial court erred by retracting a 609 jury instruction, and subsequently, Carlos Zaglatti's attorney, Mr. Bosch's failure to object and preserve this issue for appellate review was deficient performance under Strickland v. Washington's test for ineffective assistance of counsel. This is because, Your Honors, a guilty plea stands as the equivalent of a conviction for the purposes of impeachment under Rule 609 in these circumstances. What if the defendant decides to withdraw the guilty plea before he's sentenced? Your Honor, entering into a guilty plea is something that is taken very seriously within the federal court system. A guilty plea colloquy takes many hours, and there must be a factual basis before it may be entered into. It is not something that is withdrawn lightly. It is something that has a very strict and standard basis before it may be entered into. And it should not be withdrawn except for certain circumstances as stated under Federal Rule of Criminal Procedure 11D. It can only be withdrawn after acceptance, but before sentence, if the court rejects the guilty plea under Rule 11C-5, or if the defendant can show that there is a fair and just reason for requesting this withdrawal. Antonio Pagan had no basis for requesting this withdrawal in this case. Well, you're just educating us as to how hard it is to withdraw a guilty plea, but I'm not sure you answered Judge Roth's question, and I'm interested in the answer to that question. What happens if, in fact, a guilty plea is withdrawn before sentencing? What effect does that have? If it is withdrawn before sentencing, then as he gave testimony in this case before that happened, the jury should be made informed that he still has the opportunity to withdraw his guilty plea. This is congruent with 609E, which allows a conviction to be placed before the jury even if it's still pending appeal. In that circumstance, it's the equivalent of it could also be withdrawn, but the jury is still allowed to hear this information and assess the credibility of the witness in those circumstances. Now, what's your legal basis for saying it's a criminal conviction? I know you've made some persuasive arguments here, but give us something to hang our hats on. Your Honor, in the advisory committee notes for the Federal Rules of Evidence 609, it says that as a means of impeachment, evidence of the conviction of crime is significant only because it stands as proof of the commission of that underlying criminal act. I'm sorry. Make sure you speak into those microphones. I'm sorry. I didn't quite hear your answer there. Your Honor, it says in the advisory committee notes for Rule 609 that as a means of impeachment, evidence of conviction of crime is significant only because it stands as proof of the underlying criminal act. And, Your Honors, as I stated, before a guilty plea may be entered, there must be significant factual proof of an underlying criminal act, which it could stand for in this case. A guilty plea is a factual finding of guilt by the court. And a factual finding of guilt differs in purpose and effect from mere admission or extrajudicial confession. It is itself a conviction. Like a verdict of a jury, it is conclusive. More is not required. The court has nothing to do but enter judgment. This is language from the United States Supreme Court and Dickerson v. New Banner Institute. Now, let's talk a little bit about, you're saying that it was fair to not make the objection and to not raise the question on appeal. Yes, Your Honor. But was it prejudicial? And tell us why it was prejudicial in light of the expansive jury instruction that remained after the criminal conviction language was removed. Well, Judge Fischer, Ms. Hancock will be discussing the prejudicial prong of Strickland v. Washington's test. However, by not allowing the jury to be able to fully assess the credibility of the witness on the stand, it prevented the jury from being able to fully understand what was happening in the case and therefore prejudice the client. So, as I was stating, under Rule 609, what is required is proof of factual finding of the underlying criminal act. What is not required, Your Honors, is an actual sentence be entered against the individual in that case. Once again, in Dickerson v. New Banner Institute, it does not matter that the individual has been actually punished. All that is required is that punishment may be enacted upon them for the purposes of impeachment. This is necessary for the policy reasons of 609, which allows the jury to fully assess the credibility of the witness once they are on the stand. Have you looked at Black's Law Dictionary at all? Yes, I have, Your Honor. Is there a version of Black's Law Dictionary which would support your position and likewise support the plain language interpretation of the rule? Yes, there is, Your Honor. Which one is it? The ninth edition, Your Honor. And the same definition of conviction is also stated by this court and accepted by this court in U.S. v. Adams, where there are two different definitions of conviction. One is where a sentence has been entered into, yes, but the other one is where there is a factual finding of guilt such as a guilty plea or verdict in the case. And that is sufficient enough for the purposes of impeachment under this rule, Your Honor. But in the 68 edition, it says Black suggests that conviction was commonly used to refer to both a finding of guilt, a guilty jury verdict, not to a guilty plea. Yes, Your Honor, but it should still be acceptable in these circumstances because the guilty plea, as stated in the advisory committee notes, all that needs to be found is the factual finding of guilt. While it creates a better demarcation, it is not sufficient enough in this case. Antonio Pagan was the key governmental witness, and this is a common occurrence. He had skin in the game. That's the point of the instruction. He's a motivated witness, right? Yes, Your Honor. That's the point of the instruction. The jury needs to know that Pagan is motivated to help himself by testifying against Segletti, right? Yes, Your Honor. This is a common occurrence. And did the jury not know that in this case, even with the modified jury instruction? Based on the way that they were instructed in this case, Your Honor, no. They were not sufficiently able to fully assess the credibility of the witness. Antonio Pagan, and by... Well, they knew he had pleaded guilty. But the way that they were... And they knew he stood to gain from his testimony. Yes, Your Honor, but I see my time is up, but I'm just going to go ahead. Go ahead. Yes. While they knew that he was guilty, based on the way that the jury instructions were entered into and the way the jury was instructed, it was almost like he was not constructively impeached in this case. And this allowed the prosecution to decide how and when 609 is applied. And this completely undermines the purpose of 609 and the ability of impeachment to allow the jury to fully assess the credibility. If we allow this to stand, as it did in this case, it will allow the prosecution to determine that since he pled guilty but has not yet been sentenced, we can put him on the stand and we're not allowing the jury to assess his credibility. It's a travesty, Your Honor, and should be looked at in this instance. Ms. Ravnik, were you only going to argue the 609 question? I was also going to argue the ineffective assistance of counsel under Strickland v. Washington's first bond, but I've seen I've run out of time. Well, go ahead, and I want you to take a couple minutes to address that. Okay. In Strickland v. Washington's test, it is found that when conduct undermines the proper functioning of the adversarial process, a trial cannot be relied upon as producing a just result. Counsel is found to be ineffective. When their conduct makes errors so serious, the counsel was not functioning as counsel as guaranteed to the defendant under the Sixth Amendment. Your Honor, counsel is held to an objective standard of reasonableness when they act at trial, and Attorney Bosch was objectively aware that he should have objected to the retraction of this jury instruction. He stated at trial that I think it needs to be said that he pleaded guilty after the jury instruction was retracted. However, he did not formally enter an objection on this matter, preventing the issue from being preserved for appellate review and preventing Carlos Zagledi from fully being able to have his case analyzed. He did raise the question in his motion for a new trial, though, did he not? He talked about it, but he did not raise it, Your Honor. He did not specifically raise it? No, he did not, Your Honor. He mentioned it in his motion for judgment of acquittal as well as in his memo of law supporting that motion, but he did not raise the issue for appeal. I know he didn't raise it on appeal, but he did raise it in the motion for a new trial before the district court, did he not? Yes, Your Honor. It still does not meet the objective standard of reasonableness. His failure to request a jury charge and prevent it from being brought up onto appeal, even though he could have brought it and he's not required to bring in every strategic issue, I misspoke, Your Honor, I apologize, every issue except for strategic purposes, there's no strategic reason not to bring up this meritorious argument on appeal. It should have been brought. Okay, Mr. Rudnick, thank you very much. Thank you, Your Honor. And this time we'll call Ms. Hancock. Maybe the 1968 version of Black's Dictionary was written before Brian Gardner got his hands on it. That's possible. It could be a valid reason. Good morning. My name is Mary Hancock on behalf of the appellant in this case, Mr. Carlo Scoletti. Because of the unprofessional errors on the part of trial counsel in failing to object to the retraction of the prior conviction jury instruction relating to the government's star witness, Antonio Pagan, this court should find that the prejudice prong of Strickland was met. The close examination of Mr. Pagan was extensive. I read it in the record, and the jury understood full well whether you considered it an actual conviction or not, what he stood to gain from testifying against the defendant in the Scoletti trial. And didn't the jury have everything they needed in order to properly judge the credibility of Mr. Pagan? It's unclear, Your Honor. The last thing that the jurors heard when they retired to the jury room was Pagan has no prior conviction. There's a presumption throughout this circuit that jurors are presumed to follow the instruction of the trial judge. As the government admitted in its brief, there are two definitions of the term convictions that are commonly known, one which encompasses a guilty plea, while the other does not. There was no way of knowing what definition that the jurors were going to apply. It was Mr. Bosch's job to object if he thought that the jurors may be confused. And it's obvious that he did think that, because he said at trial, I think it needs to at least be said that he pled guilty. It wasn't that said. Sorry, what was that? It wasn't the jury informed of that fact. Before. But the last thing that they heard before they went into the jury room was Pagan has not pled guilty. And there was sort of an uncertainty. Judge Rambo instructed that Pagan has not pleaded guilty. Oh, she stated, I apologize, she stated Pagan has no prior conviction. Right. After she had already said that he pleaded guilty. It was removed. There was an initial instruction. Then there was a hearing where the objections of the government and Mr. Segletti and the other counsels talked about it. And then the jurors were called back into the room. And then the last thing that she said at the end of the instruction was Pagan has no prior conviction. And did she also instruct the jury under the standard instruction about motivated witnesses? Originally she did, Your Honor. So why shouldn't we assume that the jury took cognizance of that instruction as well? I believe that the jury was sufficiently confused. I'm not sure that they were able to weed out whether or not Pagan had any sort of pending conviction or not in this specific case. And because of that confusion, Mr. Bosch needed to object. And he understood that he needed to object when he raised the same issue in his post-trial motions, which the district court denied because they stated that he had failed to object. You're arguing a point that's argued frequently in trial courts and appellate courts and prosecutors trying to get prior convictions into records for purpose of impeachment. Just what does it mean? What benefit is it to be able to tell a jury that Mr. Pagan was convicted? It undermines his credibility, Your Honor. He was the only witness who was able to testify. I understand that, but how much does it add to what has already been said about the fact that as a government witness he was motivated to testify because he was facing a sentence I think that was anywhere from 10 years to life or 20 years to life. Big gap in there for a young person. So why would the fact that he had a conviction really add anything to the fact that the jury had already been given the motivation instruction? If this court looks to Branch v. Sweeney, it's clear that just a little bit extra can be the deciding factor. This court found that there was ineffective assistance of counsel where the defense failed to call two exculpatory witnesses, even though other exculpatory witnesses had already been called in favor of the defense. In doing so, this court primarily relied on the fact that it was a close case. Pagan's testimony was critical in order to establish Segletti's state of mind, and as such, the prejudice likely flowing from the retraction of the Rule 609 instruction provides a probability sufficient to undermine the confidence in the outcome. Turning to the procedural issue, under the applicable standard of interpretation, there is a reasonable basis for concluding that Mr. Segletti's habeas petition included both ineffective assistance of counsel claims. Courts consistently hold that a pro se habeas petition should be interpreted liberally. Let me ask you about that, Ms. Hancock, because you're quite right that we have a lot of case law talking about the latitude that we give to pro se litigants. There's also a lot of case law out there about the jurisdictional nature and the strictness of the one-year AEDPA statute of limitations. How are we to reconcile these apparently competing considerations? Is there any case law that helps us do that? Or perhaps more directly, do you have any case law to support the notion that the strict AEDPA one-year statute of limitations can be forgiven or bypassed in the case of a pro se litigant? The case law that we look to for liberal construction is Rady v. Varner and U.S. v. Pennsylvania. However, if you look to United States v. Thompson, which was also cited in our brief, the court in this case said the purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities. Well, the statute of limitations isn't exactly a technicality, is it? No, it's not. It's jurisdictional. You're absolutely right. If we go to the relation back argument, another reason Mr. Segleti's claim is not procedurally barred is that the claim as raised in Segleti's reply relates back to the original habeas petition because it involves the same common core of operative facts. Right. So that's an issue that applies equally to pro se or non pro se litigants. There's an opportunity to argue relation back. Yes, Your Honor. But for relation back, isn't it the case that it must relate back to essentially the same argument or the same core of common facts? And here it does, Your Honor. Mr. Segleti raised in his original habeas petition, his first claim was an ineffective sub-counsel claim partly based on the unprofessional omissions and misconduct of his trial counsel. In his second claim, he addressed his substantial rights violation that Mr. Bosch failed to bring up on direct appeal. He cited as a direct result of each of these failures that the prior conviction jury instruction would not have been retracted. Further, on page 375 of his original habeas petition, we would be looking at round two, he states, he uses the term convictions plural, and he includes both the Eastern District of Pennsylvania guilty plea and another conviction in doing so. He was defining convictions to include both the Eastern District guilty plea. Primarily, doesn't the pro se petition talk about some mistaken allegations that convictions occurred in Puerto Rico? Yes, I see my time is running. It's okay, you can answer. It does talk about the claim in Puerto Rico. However, it can't be interpreted so narrowly. We really are looking at a liberal construction as opposed to something so narrow. Don't we have to look at the context though? All of the disputation was about the supposed Pagan convictions in Puerto Rico and it turned out, as I understand it, to be a case of some other Pagan. Is that right? You're right in that sense. It can't be looked at so narrowly though. He states other convictions within that same round one. It's not solely the conviction in Puerto Rico. If you look at the language, it looks like he's truly trying to bring in any conviction that might be related to Mr. Pagan. Okay. Thank you, Your Honors. Thank you, Ms. Hancock. We'll have you back for a rebuttal. At this time, we'll call Mr. Cerruti. Thank you. Good morning, Your Honors. May it please the Court, Stephen Cerruti on behalf of the United States. As we've been talking about this morning, Segletti does raise two separate issues on appeal. There are problems with both of them, both procedural and substantive, the first one being the procedural issue that was just discussed, and that's timeliness. And Judge Hardiman, I think you were absolutely right when you said that the original claim that was raised in Mr. Segletti's petition has to be taken in context. And the context is exclusively, the United States believes, the context of these erroneously found, erroneously believed to be convictions in Puerto Rico in the 90s of Mr. Pagan. Well, the trial judge didn't think so. So what are we to make of that? Are we to give any deference to Judge Rambo's decision in this regard? I don't think you should because we, the government, do believe that she erred on that. What's our standard of review on that issue? For this case, I think because we're looking at interpreting what was actually raised, I think you can use a plenary standard. We're not talking about an actual finding of fact, those convictions. At this point, no one disagrees, and at the time they didn't disagree, that those were not the convictions of the same Antonio Pagan. So Ms. Hancock just made a good point about convictions plural. Isn't there some nebulousness in that that maybe barely gets him over the hurdle that allows him to relate the claim back? I'd say no because you do have to take it all in context. He does refer to it. What context can you point to to show us that convictions doesn't mean the conviction that we've been talking about here? Page after page in both of his initial two issues that he raises in his petition that refer to specific case numbers out of Puerto Rico and in the mid-'90s where he talks about those convictions. To the extent that he references the 2008 conviction at all, it is simply to say that as a result of these other convictions that he believed Mr. Pagan received in Puerto Rico and in the 90s, that would have raised his minimum sentence in the 2008 conviction. At no point does he argue that the 2008 conviction wasn't brought up. As the record shows, it clearly was. The 2008 guilty plea that ultimately became a conviction. So if he talks for page after page after page about the Puerto Rico and 90 convictions, 90s convictions, then when he references convictions later on, it would be reading something into his pleadings that simply isn't there to think that he's referring to the 2008 guilty plea. But isn't the common core of the argument, the question is, what did Mr. Bosch do as Mr. Sigletti's counsel to challenge Pagan's credibility with prior convictions? Yes. Isn't that the common core? Well, the operative facts for that would be, again, you look to what he's accused of not doing in the first two claims that Mr. Sigletti raised in his 2255 petition, and that goes to investigation pretrial, which would have discovered these Puerto Rican and mid-90s convictions, or if you go to claim two, that it's the government's alleged misconduct and Mr. Sigletti's failure, because of his lack of investigation, to be able to call the government on that alleged misconduct. That is completely different, both in time and type and the operative facts, than the claim that he is trying to raise here, which is at the very end of trial, and indeed then on appeal, he didn't raise the issue of the 2008 guilty plea as support for a 609 instruction. Do you say this is a completely new claim? Yes. As we held under the case of U.S. v. Duffus? Yes, this would be a completely new claim. And you know it deals with Pagan's credibility based on prior conviction? It's a completely new claim because it's dealing with what the attorney did or didn't do with regard to an instruction at the end, as opposed to his failure to investigate certain other convictions prior to that. And in fact, if you read the language that Mr. Sigletti uses in his initial petition, it actually doesn't seem to take that much issue with the court's retraction of the instruction to the extent he references it at all, absent the fact that it wouldn't have done it if these prior convictions in Puerto Rico in the mid-90s had been known. Okay. Well, what if we say, no, we think it's timely. What do you say then? I was just about to move on to address prejudice next, which again, Judge Hardiman, you brought this up. Here we have a situation, and Judge Roth, you actually brought up the fact that at trial, in testimony, there is no doubt that the fact of Mr. Pagan's guilty plea, his plea agreement with the government, the nature of his crime that he pled guilty to in 2008 in the Eastern District, the significant amount of time that he was facing was all brought up. That was brought out immediately by the government on direct examination. It was brought out by Sigletti's counsel on cross-examination. After it had already been addressed as well by one of his co-defendants' counsel, Mr. Weitzman. So we're talking page after page after page of discussion about this during the admission of testimony. And then we move on to the jury's instructions that were provided at the end. And Judge Hardiman, as you noted, an instruction based on Third Circuit Model Jury Instruction 4.19 was given. And that is much more pointed, I would say, in directing the jury to address or question the credibility of a witness than the retracted instruction, which was 4.25, which is basically just two lines saying this person has been convicted, you may consider that. When you look at 4.19, which was not retracted, and I would agree that jurors are expected and believed to follow the instructions they are given, but look at the instruction that was left to remain, 4.19. Well, maybe the jury might have been confused when the judge, at the very end, without referring to what came earlier, said, this man does not have a conviction. And could the jury have understood that that incorporated all the instruction about interested witnesses? I think because the court limited the discussion to conviction, right after having discussed separately conviction from the plea agreement with the government, the chances of that are minimal. Also, you have the fact that the... But did the jury hear all this discussion? It did not hear the discussion between counsel and the court. It did hear the judge then come out and say, look, I just told you that he was convicted, he was not. That would be struck from the charge that was provided to the jury. Now, that charge that was not only delivered to the jury, but the written instructions that were given to the jury for their deliberations, it doesn't appear that those instructions are in the record. The actual written instructions. Not in the record. I have not seen those either. You what? I have not seen them in the record either. Okay, so there's no... You haven't seen them, they apparently did not appear. Not that I could find in the record, and I did look. Okay, thank you. But you have a very significant differentiation between talking about a plea agreement and talking about the benefit that would in your to Mr. Segre, or to Mr. Kavan if he testified in favor of the government. That was certainly something that was brought up in closing. That was something that was the focus of attempts to impeach him during his cross-examination. And while I cannot stand here and say, because I don't know the jurors, I didn't talk to them afterwards, and neither did trial counsel, exactly what was going through their minds. So is it possible that maybe there was a little bit of confusion? Sure. Is it likely, given the facts that we have here? Don't believe so. Let's also look at the fact that it wasn't just a matter of what Mr. Pagan testified to. There were also wiretaps that corroborated his testimony, and so that increases the reliability of that testimony. What about really the essence of the deficient performance question here? Is a guilty plea a conviction? For these purposes, the government would argue no, as we did in our brief. A guilty plea does not equate to a conviction. The government does take significant issue with opposing counsel's claim that this is a settled question, and that Third Circuit precedent and other precedent elsewhere dictates this result. It certainly does not. We would look at some of the same cases to point out that a guilty plea is considered very differently than a jury verdict. The Vanderbosch case, the Klein case, even the Dickerson case, where when you look at footnote 7, after it has talked about how conviction can have different meanings, in footnote 7 it seeks to differentiate the case that it's dealing with there, where under an Iowa statute the defendant was given a sentence of probation after a guilty plea, differentiates the Locke case, where the Supreme Court said that a no vote plea is the functional equivalent of a guilty plea, but could not serve as a conviction because no sentence or judgment had been entered at that time. So, well, because that was talking about a no vote plea, I can't make the argument here that it would bind this court. It certainly is persuasive authority that there is going to be a difference, and there should be a difference, in the way that a guilty plea without entry of judgment and sentence should be treated differently than a jury verdict of guilt prior to entry of sentence. And I think when you get into the policy reasons, then, for drawing a bright line rule, the policy reasons support drawing that bright line rule at judgments and sentences, because you can have a guilty plea withdrawn. No, it didn't happen in this case, but if we're talking about a general rule that's going to apply, it's going to apply in cases in the future where someone may be trying to withdraw their guilty plea. Is it important in this case that we clearly elucidate what the significance of the one-word conviction means? No, because obviously the government, as I've argued here today in my group, believes that this case can easily be resolved, if not on the prejudice prong, then on the timeliness prong as well. I don't think that this court needs to get into addressing the perhaps sticky wicket, without clear precedent, dictating how 609's conviction requirement should be interpreted. So I don't think the court needs to get there to resolve this case. And so it only addresses one of the two strickland prongs, and that's even if you get by the procedural issue that the government has raised. Okay. Anything else, Mr. Cerruti? I have nothing else. If the court is through with questioning, thank you very much. Well, we thank you very much, and we'll call Ms. Hancock back for rebuttal. Good morning again. Just a couple points on rebuttal. First, we contacted Judge Rambo's chambers, and they do not have the jury instructions that were sent back with the jurors. Second, if you look on page 375 of the joint appendix, we're looking at Mr. Segletti's original habeas petition. It states on information and beliefs, Segletti states, that the government knowingly permitted material false jury testimony to remain uncorrected about Antonio Pagans having the only one prior guilty plea and conviction in the Eastern District of Pennsylvania, when he apparently previously had already been convicted, and he goes on. Throughout this petition, he uses convictions plural, and he also cites his Eastern District of Pennsylvania guilty plea and conviction on the specific page. It's clear that he is using the term conviction to mean guilty plea, and that the plural should include the Eastern District guilty plea. Finally, if you look to the operative language that Dickerson was looking at, that's the same operative language in the statute. They looked at the language, and they found that a guilty plea does, in fact, include a prior, is a conviction for the purposes of that statute, and the purpose of the statute there was to assess credibility, as it is here. Thank you, Your Honors. All right, we thank you very much. And we want to thank all counsel, and particularly want to thank Duquesne University School of Law and your Federal Appellate Clinic, as well as your students, Mr. Rowe, for helping in this case and for performing pro bono service, and also for the preparation that you and your students put in to present this very effective argument to the court. We look forward to hearing them argue before us in Philadelphia when they have graduated. Very kind words, and we appreciate it. Several other students in the class, as well as Professor Stephen Baker McKee are here. They all did a team effort to get these two students ready, so it's very kind of them. And we thank you, Mr. Ceretti, and at this time we'll take the matter unnoticed.